## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| MITAVION WILLIAMS | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | CIVIL ACTION NO. |
| | ) | 1:21-cv-3015-AT-CCB |
| | ) | |
| VICTOR HILL and | ) | |
| DEXTER WARD | ) | |
| | ) | |
| Defendant. | ) | |

## BRIEF IN SUPPORT

### I. INTRODUCTION

The original case is pending before this Court on a motion to dismiss.

Among the issues is whether or not Plaintiff has exhausted his administrative

remedies. The proposed amendment concerns the shooting of Plaintiff with plastic

pellets by an officer named Dexter Ward on January 27, 2022, a date subsequent to

the date of his original claim. But because Plaintiff needs to raise a supplemental

claim under F.R.C.P. 15(d), as well as the fact that he has already amended his

complaint, permission of the Court is required.

### II. EXHAUSTION

According to Standard Operating Procedures (SOP) No:.9d

Time Constraints:

a.      Grievances shall be processed in a timely manner.

b.      A response shall be given to the inmate no more than (10) calendar

days from the receipt of the grievance.

c.      In all cases the final decision shall be provided within 30 calendar

days, from the filing of the grievance by the inmate.

Plaintiff was shot by then Sgt. Dexter Ward on January 27, 2022 with plastic

pellets from a Mossberg shotgun. He has filed a grievance as to this matter, but has

never received a response to this day.

As the Court noted in <u>Smith v. Wade</u>, 2020 WL 7025076 (N.D. Ala. 2020):

> Although the Eleventh Circuit has not ruled on this
> specific issue, other circuits have found that an
> inmate meets the PLRA exhaustion requirement if
> officials fail to timely respond to the inmate's
> grievance. <u>See</u> <u>Bryant v. Rich</u>, 530 F.3d 1368,
> 1373, n.6 (11th Cir. 2008) (noting that other courts
> have found the administrative remedies
> "unavailable" when prison officials do not respond
> to grievances or if they prevent the filing of
> grievances); <u>Whitington v. Ortiz</u>, 472 F.3d 804,
> 807-08 (10th Cir. 2007) ("[W]hen prison officials
> fail to timely respond to a grievance, the prisoner
> has exhausted 'available' administrative remedies
> under the PLRA");  administrative remedies under
> the PLRA"); <u>Fazzini v. Ne. Ohio Corr/ Ctr.</u>, 473
> F.3d 229, 234 (6th Cir. 2006) (holding "the
> exhaustion requirement is satisfied where prison
> officials fail to timely respond to an inmate's
> written grievance") (quotation marks and citations
> omitted); <u>Lewis v. Washington</u>, 300 F.3d 829, 833
> (7th Cir. 2002) (refusing to permit prison officials
> "to exploit the exhaustion requirement through
> indefinite delay in responding to grievances")
> (quotation marks and citation omitted).

slip at 4. However, in <u>Davis v. Florida Department of Corrections</u>, 264 Fed Appx. 827 (11th Cir. 2008) the Court agreed with an inmate who argued on appeal "that as FDOC officials failed to timely respond to his grievances, he properly exhausted avaliable administrative remedies, and dismissal was therefore improper." <u>Id.</u> at 827-828. <u>See also Lewis v. Johnson</u>, 2018 WL 7283678 (N.D. Ala. 2018) slip at 4 approved in pertinent part 2019 WL 92715 (N.D. Ala. 2019); <u>Crawford v. Hines</u>, 2018 WL 2452192 (N.D. Ala. 2018) slip at 15 adopted 2018 WL 2445809 (N.D. Ala. 2018). <u>Carroll v. Amerson</u>, 2013 WL 1346790 fn. 2 (N.D. Ala. 2018). <u>See generally Peoples v. Fischer</u>, 2012 WL 1575302 (S.D.N.Y. 2012) and cases cited at fn. 76.[1]

As Judge Story has noted "In keeping with the overarching theme of Rule 15, courts have treated requests to supplement under Rule 15(d) liberally." citing <u>U.S. ex. rel Gadbois v. Pharmerica Corp.</u>, 809 F.3d 1, 17(1st Cir. 2015) slip at 2. <u>Blue Ridge Mountain Electric Membership Corp. v. America's Center Corp.</u> 2020 WL 10619129 (N.D. Ga. 2020). <u>See McClure v. Hyers</u>, 2020 WL 5649332 (S.D. Ga. 2020) slip at 3, approved 2020 WL 5648203 (S.D. Ga. 2020); <u>accord</u>

---

[1] Additionally Plaintiff notes that whether or not the Court determines the exhaustion requirements for the restraint chair allegations were fulfilled or not, such determination does not affect the amendment. <u>See</u> <u>Brent v. Raddish</u>, 2019 WL 4600366 (M.D. Fla. 2019) slip at 10; <u>Young v. Reno</u>, 2021 WL 970460 (S.D. Ga. 2021) and cases cited at slip 2-3 approved 2021 WL 964280 (S.D. Ga. 2021).

Automobile Protection Corp. v. N.B.A. Automotive, 2020 WL 10486546 (N.D.
Ga. 2020).

The same standards apply to the adding of new Defendants and claims. See
e.g. Kolter v. Bosco, 2019 WL 12291097 (N.D. N.Y. 2019) slip at 4; Wright,
Miller, & Kane Fed. Practice and Procedure 2nd Ed. 2004 at § 1504 explains the
requirement of F.R.C.P. 15(d) this way:

> Similarly, a party may assert seperate or additional
> claims or defenses arising after the
> commencement, although the court typically
> requires some relationship between the original
> and the later arising material.

(emphasis added). As the Court explained in Keith v. Volpe, 858 F.2d 467, 414-
475 (9th Cir. 1988):

> Hawthorne points out that the supplemental
> complaint involves additional statutes and labels
> this a "new and distinct" action. It further asserts
> that the two pleadings do not "arise out of the same
> transaction or occurrence" nor involve "common
> questions of law or fact." Hawthorne seeks to build
> into Rule 15 requirements from other rules, such as
> the transactional test pertaining to compulsory
> counterclaims, Fed.R.Civ.P. 13(a).
> Rule 15(d), however, makes no reference to any
> such test. The absence of a transactional test,
> which is an integral part of other Federal Rules of
> Civil Procedure, see, e.g., Fed.R.Civ.P. 13(a),
> 14(a), and 20, is a strong indication that this test is
> not required. Further, Rule 15(d) specifically
> permits supplemental pleadings "setting forth
> transactions or occurrences or events which have
> happened since the date of the pleading sought to

be supplemented." This textually negates the argument that a transactional test is required. While some relationship must exist between the newly alleged matters and the subject of the original action, they need not all arise out of the same transaction. Professor Moore has explained the principle succinctly:

While the matters stated in a supplemental complaint should have some relation to the claim set forth in the original pleading, the fact that the supplemental pleading technically states a new cause of action should not be a bar to its allowance, but only a factor to be considered by the court in the exercise of its discretion, along with such factors as possible prejudice or laches.

3 J. Moore, Moore's Federal Practice ¶ 15.16[3] (1985).

Here, there is clearly a relationship among the claims in this action and the claims in the original action. This action involves a city's refusal to approve housing developments specifically meant to provide replacement housing for the Century Freeway displacees. In the original action, plaintiffs alleged that the defendants had failed to meet federal statutory requirements concerning relocation payments, relocation assistance programs, and adequate replacement housing. The district court's published order devoted nearly five full pages to the issue of the availability of replacement housing. Keith, 352 F. Supp. at 1346-50.

In 1981, the parties entered into a consent decree setting forth the defendants' obligations. The decree creates an Office of the Advocate for Corridor Residents, whose responsibilities include monitoring defendants' compliance with federal and state regulations pertaining to displacees' relocation rights and assisting displacees in obtaining adequate replacement housing.

Thus, it is clear that a focal point of the original proceedings was the provision of adequate replacement housing. Further, the district court specifically provided in the consent decree that it retained jurisdiction in the matter. Since the court expressly reserved its jurisdiction over later developments, an even stronger case is presented here for permitting a supplemental complaint than in Griffin v. County School Board, 377 U.S. 218, 84 S.Ct. 1226, 12 L.Ed.2d 256 (1964), where the Supreme Court approved a supplemental complaint after the district court had entered a final judgment.

The concern in the original action, the consent decree, and the supplemental complaint is the same — the availability of replacement housing for persons displaced by the Century Freeway. The Fourth Circuit in Rowe also focused on the confluence of the actual objectives between the parties' original pleadings and the proposed supplemental filings. See Rowe, 421 F.2d at 943-44. The United States Supreme Court has rejected the kinds of objections that Hawthorne urges in arguing that the supplemental complaint was improper. The Supreme Court has stated that new claims, new parties, and events occurring after the original action are all properly permitted under Fed.R.Civ.P. 15(d).

It is contended that the amended supplemental complaint presented a new and different cause of action from that presented in the original complaint. The supplemental pleading did add new parties and rely in good part on transactions, occurrences, and events which had happened since the action had begun. But these new transactions were alleged to have occurred as a part of continued, persistent efforts to circumvent our 1955 holding that Prince Edward County could not continue to operate, maintain, and support a system of schools in which students were

> segregated on a racial basis. The original
> complaint had challenged racial segregation in
> schools which were admittedly public. The new
> complaint charged that Prince Edward County was
> still using its funds, along with state funds, to
> assist private schools while at the same time
> closing down the county's public schools, all to
> avoid the desegregation ordered in the Brown
> cases. The amended complaint thus was not a new
> cause of action but merely part of the same old
> cause of action arising out of the continued desire
> of colored students in Prince Edward County to
> have the same opportunity for state-supported
> education afforded to white people, a desire
> thwarted before 1959 by segregation in the public
> schools and after 1959 by a combination of closed
> public schools and state and county grants to white
> children at the Foundation's private schools. Rule
> 15(d) of the <u>Federal Rules of Civil Procedure</u>
> plainly permits supplemental amendments to cover
> events happening after suit, and it follows, of
> course, that persons participating in these new
> events may be added if necessary. Such
> amendments are well within the basic aim of the
> rules to make pleadings a means to achieve an
> orderly and fair administration of justice.
> <u>Griffin</u>, 377 U.S. at 226-27, 84 S.Ct. at 1231.

<u>See</u> <u>West Alabama Women's Center</u>, 318 FRD M3, 148 (M.D. Ala. 2016).

In this case, it is certainly arguable that the proposed amendment would be a

related case to the restraint chair case already before the Court. <u>Compare</u> the

Court's Civil Cover Sheet with <u>Wolf Designs, Inc. v. DHR & Co.</u>, 231 FRD 430

(N.D. Ga. 2015).

The overriding issue in this case is the continuing punishment of Plaintiff under the Fourteenth Amendment.

There are a number of factors to consider, see West Alabama Women's Center, supra.

> 1) The amendment must be based on a "transaction, occurrence, or event that happened after the date of the pleading to be supplemented."
>
> 2) The supplementation must have 'some relation' to what is to be supplemented.
>
> 3) Would a non-movant be prejudiced?
>
> 4) Unreasonable delay.
>
> 5) Would the supplementation facilitate the efficient resolution of current claims as well as new ones.

Judge Story's list of factors in Blue Ride Mountains, supra is similar.

The occurrence happened after the complaint was filed.

As shown above, there is "some" relation between the initial complaint and the proposed supplemental claim.

There would be no prejudice to Mr. Hill since discovery has not yet begun. Since Plaintiff was shot less than three months ago and has been exhausting his

administrative remedies there is no unreasonable delay. Finally, such an

amendment would facilitate the litigation of this case.

Judge Story also notes futility and it is to that question Plaintiff now turns.

### III. THE CLAIMS ARE NOT FUTILE

This is a case under the Eighth Amendment and for violation of the Georgia

Constitution and common law.

Mr. Ward went into the cell brandishing a shotgun which he cocked to scare

the inmates. As the Sixth Circuit recently discussed:

> Based on the facts alleged in Small's complaint,
> Brock had no legitimate penological reason for
> repeatedly placing Small in fear of his life, and it is
> reasonable to infer that Brock knew that his
> conduct would Small psychological harm. See
> Whitley v. Albers, 475 U.S. 312, 320-321, 106 S.
> Ct. 1078, 89 L.Ed.2d 251 (1986); see also Farmer
> v. Brennan, 511 U.S. 825, 842, 114 S. Ct. 1970,
> 128 L.Ed.2d 811 (1994). The issue then is whether
> unprovoked and repeated threats to a prisoner's
> life, combined with a demonstrated means to
> immediately carry out such threats, constitute
> conduct so objectively serious as to be "antithetical
> to human dignity." Hope v. Pelzer, 536 U.S. 730,
> 745, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002).
> We find that such threats meet this standard.
> At the very least, a prisoner has "the right to be
> free from the terror of instant and unexpected
> death at the whim" of his jailers. Burton v.
> Livingston, 791 F.2d 97, 100 (8th Cir. 1986); see
> also Pelfrey, 43 F.3d at 1037. To that end, Brock's
> alleged pattern of conduct far exceeds the idle
> threats and verbal harassment we have previously
> found inadequate to trigger Eighth Amendment

protection. See, e.g. Johnson v. Dellatifa, 357 F.3d 539, 546 (6th Cir. 2004). A threatened loss of life, when made credible by the aggressive brandishing of a deadly weapon, is beyond the type of "unpleasant experience" that prisoners must endure. Id.; see Hudson v. McMillian, 503 U.S. 1, 16, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992). (Blackmun, J. concurring) (noting the Supreme Court's rejection of a significant physical injury requirement and using the example of death threats with a gun to illustrate an infliction of psychological suffering prohibited by the Eighth Amendment).

We thus hold that a prisoner states an Eighth Amendment claim by alleging that, without provocation, a prison official threatened the prisoner's life on multiple occasions and took concrete steps, such as aggressively brandishing a deadly weapon, to make those threats credible. See Irving v. Dormire, 519 F.3d 441, 448-50 (8th Cir. 2008) (finding that "objectively credible" death threats that cause a prisoner to fear for his life violate the Eighth Amendment); Chandler v. D.C. Dep't of Corr., 145 F.3d 1355, 1360-61(D.C. Cir. 1998) (same); Northington v. Jackson, 973 F.2d 1518, 1523-24 (10th Cir. 1992) (same); Grant v. Foye, 981 F.2d 1258, 1992 WL 371312 at 2 (9th Cir. 1992) (table) (same); Hudspeth v. Figgins, 584 F.2d 1345, 1348 (4th Cir. 1978) (per curiam) (same).

Small v. Block, 963 F.3d 539, 541-542 (6th Cir. 2020).

Of course, the real problem is that Defendant Ward shot Plaintiff with nonlethal bullets.

Long ago in Monroe v Pape, 365 U.S. 167, 187 (1961) the Court noted that a man is "responsible for the natural consequences of his actions." If you cock a

shotgun and it goes off (assuming the best plausible argument Defendant could

make), that is a natural consequence of what happens when a cocked loaded

shotgun is pointed at someone.

This was not a Whitley v Albers, 475 U.S. 312, (1986) situation.

Nevertheless:

> Where a prison security measure is undertaken to
> resolve a disturbance, such as occurred in this case,
> that indisputably poses a significant ricks to the
> safety of inmates and prison staff, we think the
> question whether the measure taken inflicted
> unnecessary and wanton pain and suffering
> ultimately turns on "whether force was applied in a
> good faith effort to maintain or restore discipline
> or maliciously or sadistically for the very purpose
> of causing harm." Johnson v. Glick, 481 F.2d
> 1028, 1033 (CA2) (Friendly, J) cert. denied sub
> nom. John v. Johnson, 414 U.S. 1033, 94 S.Ct.
> 462, 38 L.Ed.2d 324 (1973). As the District Judge
> correctly perceived, "such factors as the need for
> the application of force, the relationship between
> the need and the amount of force that was used,
> [and] the extent of the injury inflicted," 481 F.2d,
> 1033, are relevant to that ultimate determination.
> See 546 F.Supp., at 733. From such considerations
> inferences may be drawn as to whether the use of
> force could plausibly have been thought necessary,
> or instead evinced such wantonness with respect to
> the unjustified infliction of harm as is tantamount
> to a knowing willingness that it occur. See
> Duckworth v. Franzen, 780 F.2d 645, 652 (CA7
> 1985) (equating "deliberate indifference," in an
> Eighth Amendment case involving security risks,
> with "recklessness in criminal law," cf. Block v.
> Rutherford, 468 U.S. 576, 584, 104 S.Ct. 3227,
> 3231, 82 L.Ed.2d 438 (1984) (requiring pretrial

detainees claiming that they were subjected to "punishment" without due process to prove intent to punish or show that the challenged conduct" 'is not reasonably related to a legitimate goal,'" from which an intent to punish may be inferred); <u>Bell v. Wolfish</u>, <u>supra</u>, 441 U.S., at 539, 99 S.Ct., at 1874. But equally relevant are such factors as the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials on the basis of the facts known to them, and any efforts made to temper the severity of a forceful response.

Plaintiff believes that he meets the <u>Whitley</u> standard. <u>See</u> <u>McCattel v. White</u>, 933 F.3d 066 (7th Cir. 2019); <u>cf.</u> <u>Mercado v. City of Orlando</u>, 407 F.3d 1152, 1158-1159 (11th Cir. 2005); <u>LaMarca v. Turner</u>, 995 F.2d 1526, 1523-1535 (11th Cir. 1993).

## IV. DEFENDANT WARD HAS NO QUALIFIED IMMUNITY

In <u>Vinyard v. Wilson</u>, 311 F.3d 1340 (11th Cir. 2002) the Court discussed qualified immunity in an "obvious clarity" case. <u>Id.</u> at 1350-1351 and noted:

For the first and second type of notice or warning, <u>Hope</u> instructs that "[a]though earlier cases involving 'fundamentally similar' facts can provide especially strong support for a conclusion that the law is clearly established, they are not necessary to such a finding." 122 S.Ct. at 2516. Instead, in the absence of fact-specific case law, the plaintiff may overcome the qualified immunity defense when the preexisting general constitutional rule applies "with obvious clarity to the specific conduct in question," and it must have been "obvious" to a reasonable officer that the pertinent conduct given the circumstances must have been

12

unconstitutional at the time. Id. (quoting United States v. Lanier, 520 U.S. 259, 271, 117 S.Ct. 1219, 137 L.Ed.2d 432(1997)). In elaborating particularly about the second type of notice or warning (i.e. this second kind of "obvious clarity" case), the Supreme Court in Hope quoted from its earlier decision in Lanier:

See generally Taylor v. Rioja, 141 S.Ct. 52, 53-54 (2020).

Recently in Bradley v. Benton, 10 F.4th 1232, 1242-1243 (11th Cir. 2021) the

Court again noted:

> The ordinary way of showing that a right is clearly established is by showing that "a materially similar case has already been decided." Mercado v. City of Orlando, 407 F.3d 1152, 1159 (11th Cir. 2005) (citing Harlow v. Fitzgerald, 457 U.S. 800, 818 102 S.Ct. 2727, 73 L.Ed. 2d 396 (1982)). "We do not require a case directly on point, but existing precedent must have placed the statutory or unconstitutional question beyond debate." Ashcroft v. al-Kidd, 563 U.S. 731, 741, 131 S.Ct. 2074, 179 L.Ed.2d 1149 (2011). A plaintiff may also show that a "broader, clearly established principle should control the novel facts [of the] situation." Mercado, 407 F.3d at 1159 (citing Hope v. Pelzer, 536 U.S. 730, 741, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002)). To control a novel factual situation, a broad principle "must be established with obvious clarity by the case law so that every objectively reasonable government official facing the circumstances would know that the official's conduct did violate federal law when the official acted." Waldron v. Spicher, 954 D.3d 1297, 1305 (11th Cir. 2020) (quoting Loftus v. Clark-Moore, 690 F.3d 1200, 1205 (11th Cir. 2012))). In either case, only prior decisions from the United States Supreme Court, this Court, or the relevant state

> supreme court can put officers on notice regarding
> the constitutionality of their actions. See Crocker
> v. Beatty, 995 F.3d 1232, 1240 (11ᵗʰ Cir. 2021).
>        This case passes both tests: the right in
> question was clearly established by a materially
> similar precedent and was obviously clear in any
> event.

The first precedent is Hudson v. McMillian, 503 U.S. 1, 16, (1992),

(Blackmun concurring) noting the Supreme Court's rejection of a significant

physical injury requirement and using the examples of death threats to illustrate an

infliction of psychological suffering prohibited by the Eighth Amendment.

The Eleventh Circuit cited the page of Justice Blackmun's concurring

opinion:

> As Justice Blackmun wrote in Hudson v.
> McMillian, "[i]t is not hard to imagine inflictions
> of psychological harm without corresponding
> physical harm — that might prove to be cruel and
> unusual punishment." He cited as an example, "
> Wisniewski v. Kennard, 901 F.2d 1276, 1277 (5th
> Cir.) (guard plaining [sic] revolver in inmate's
> mouth and threatening to blow prisoner's head off)

Harris v. Garner, 216 F.3d 970, 981 (11ᵗʰ Cir. 2000) (Tjoflat, concurring).[2]

---

[2] 42 U.S.C. § 1997 does not apply herein, because in fact Plaintiff was shot and did suffer a physical injury. See Hoover v. Marks, 993 F.3d 1353, 1358 (11ᵗʰ Cir. 2021) ("the limitation on damages applies to federal civil actions brought for or with the purpose of compensating, mental, or emotional injury when no physical injury is alleged (emphasis added). Moreover, 42 U.S.C. § 997(e) does not bar claims for nominal damages, see Highes v. Lott, 350 F.3d 1157, 1162-1163 (11ᵗʰ Cir. 2003) Brooks v. Warden, 800 F.3d 1295, 1308 (11ᵗʰ Cir. 2015) or for punitive damages supra.

Moreover, <u>Hope v. Pelzer</u>, 536 U.S. 730, 744 (2002) gave such notice:

> Relevant to the question of whether <u>Ost</u> provided fair warning to respondents that their conduct violated the Constitution is a regulation by ADOC in 1993.

The proposed amended complaint and Exhibits cite similar SOPs for the Sheriff's Department.

As in <u>Bradley</u> at 1244:

> Second, we would conclude that the use of force here was obviously unconstitutional even absent a case directly on point. Robinson posed no immediate threat to Officer Benton. He never tried to harm any of the officers, nor did he make any threatening movements or gestures. The officers also had no reason to think he posed a threat to anyone in the apartment complex, which he had just left. He was not suspected of committing a crime involving the infliction of serious physical harm. He was not even the suspect of the traffic stop, which was conducted on the suspicion that Sims was driving with an illegal tag. Yet, without any warning, Officer Benton applied deadly force to prevent Robinson's escape from the traffic stop on foot. We conclude that no reasonable officer could have believed that the application of deadly force was warranted under these circumstances. <u>See</u> <u>Cantu</u>, 974 F.3d at 1235 (an officer violated the Fourth Amendment with obvious clarity by, without warning, shooting a non-violent suspect who had tried but failed to grab the officer's taser); <u>Mercado</u>, 407 F.3d at 1159 (an officer violated the Fourth Amendment with obvious clarity by, without warning, firing a high velocity projectile at

a suspect who, though he had a knife and was
threatening suicide, was non-threatening toward
the officers).

Substitute the Eighth Amendment for the Fourteenth Amendment and it is

obvious that brandishing a gun at Plaintiff was action no reasonable officers would

have taken, which is why he was demoted.

But he also took no step "to temper the severity of his forceful response."

Whitley v. Albers, 475 U.S. 312, 321 (1986). More to the point is that Defendant

Ward shot Plaintiff for no reason whatsoever.

In Whitley supra the Court observed at 320-321:

We think the question whether the measure taken
inflicted unnecessary and wanton pain and
suffering ultimately turns on "whether force was
applied in a good faith effort to maintain or restore
discipline or maliciously and sadistically [475 U.S.
312, 321]   for the very purpose of causing harm."
Johnson v. Glick, 481 F.2d 1028, 1033 (CA2)
(Friendly, J.), cert. denied sub nom. John v.
Johnson, 414 U.S. 1033 (1973). As the District
Judge correctly perceived, "such factors as the
need for the application of force, the relationship
between the need and the amount of force that was
used, [and] the extent of injury inflicted," 481
F.2d, at 1033, are relevant to that ultimate
determination. See 546 F. Supp., at 733. From
such considerations inferences may be drawn as to
whether the use of force could plausibly have been
thought necessary, or instead evinced such
wantonness with respect to the unjustified
infliction of harm as is tantamount to a knowing
willingness that it occur. See Duckworth v.

16

Franzen, 780 F.2d 645, 652 (CA7 1985) (equating "deliberate indifference," in an Eighth Amendment case involving security risks, with "recklessness in criminal law," which "implies an act so dangerous that the defendant's knowledge of the risk can be inferred"); cf. Block v. Rutherford, 468 U.S. 576, 584 (1984) (requiring pretrial detainees claiming that they were subjected to "punishment" without due process to prove intent to punish or show that the challenged conduct "`is not reasonably related to a legitimate goal,'" from which an intent to punish may be inferred); Bell v. Wolfish, supra, at 539. But equally relevant are such factors as the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials on the basis of the facts known to them, and any efforts made to temper the severity of a forceful response.

In Duckworth, Judge Posner opined:

A quite different sense of recklessness, familiar from criminal law, is the sense in which for example a wrongful, deliberate, and very dangerous act which results in death though death was not intended may be downgraded to second-degree murder, with first-degree murder being reserved for deliberate homicide. A classic example is where the defendant chokes his victim, intending to injure him seriously but not to kill him, but death results. See Commonwealth v. Marshall, 287 Pa. 512, 135 A. 301 (1926); LaFave Scott, Handbook on Criminal Law 568 (1972). The defendant has deliberately committed an act that is at once socially costless to avoid (by not choking his victim in the first place) and highly dangerous. So he is severely punished, for an act that was deliberate and wrongful as well as for a

> consequence that was lethal though unintended. As
> this example suggests, recklessness in criminal law
> implies an act so dangerous that the defendant's
> knowledge of the risk can be inferred. ]

Perkins Boyce, <u>Criminal Law</u> 849-51 (3d ed.
1982).

> If the word "punishment" in cases of
> prisoner mistreatment is to retain a link with
> normal usage, the infliction of suffering on
> prisoners can be found to violate the Eighth
> Amendment only if that infliction is either
> deliberate, or reckless in the criminal law sense.

<u>See</u> <u>Farmer v. Brennan</u>, 511 U.S. 825, 836 (1994) et. seq.

He also noted an analogous circumstance, "If a guard decided to supplement

a prison official's punishment by beating him, this would be punishment." <u>Id.</u> at

652.

## V. ABUSE

As pointed out in the response to Mr. Hill's motion to dismiss, a claim exists

under <u>Long v. Jones</u>, 200 Ga. App. 298 (1993). <u>See</u> generally <u>Beasley</u>, the Georgia

Bill of Rights: <u>Dead or Alive</u>, 34 Emory L.J. 311, 390 et. seq. (1983), particularly

her discussion of <u>Westbrook v. State</u>, 133 Ga. 578 (1909) at 393.

By brandishing the shotgun at Plaintiff, Defendant Ward abused Plaintiff.

By shooting him with the shotgun, whether intentional or not, Defendant Ward

abused him. Compare Beasley, supra at 399 with Irwin v. Arrendale, 117 Ga. App.

1,3 (1962).[3]

## VI. ASSAULT AND BATTERY

The pointing of the shotgun at Plaintiff was an assault. Hrick and Adams,

Georgia Law of Torts, (2019-2020) § 7.4. The shooting of Plaintiff was a battery.

Id. at 7:3.

## VII. DEFENDANT VIOLATED A MINISTERIAL DUTY

"A ministerial duty may be established by evidence such as a written policy,

an unwritten policy, a supervisor's specific directions, or a statute." Roper v.

Greenway, 294 Ga. 112, 114-115 (2013). "Where there is an instituted policy

requiring an official to take specified action in a specific institution, the policy

creates a ministerial duty on the part of the official to perform this specific task."

Bernard v. Turner County, 306 Ga. App. 235, 238 (2010) Plaintiff does not allege

that in shooting Plaintiff, Defendant Ward's failure to follow within the SOP's

showed the violation of a ministerial duty, see Speight v. Griggs, 579 Fed. App.

757, 759-760 (2014). He does contend that Defendant lacks official immunity

because of the Court's "unwritten policy" or a "supervisor's specific direction."

Plaintiff believes he can show that Defendant violated a unwritten policy and

his training in everything he did the day he shot Plaintiff.

---

[3] Plaintiff discusses official immunity at pages 19-20 of the brief.

## VIII. DEFENDANT WARD ACTED WITH INTENT TO INJURE

> In the context of official immunity, actual malice
> means a deliberate intention to do a wrongful act.

Adams v. Hazelwood, 271 Ga. 414 (1999). As the Court noted in Speight v.

Griggs, 579 Fed. Appx. 757, 760 (2014) the fact that Mr. Ward violated policy "is

pertinent only to a determination of whether he performed a discretionary act

negligently or with actual malice."

To the extent, Plaintiff cannot show a ministerial duty, Plaintiff believes he

has shown a conscious intent to do Plaintiff harm.

## CONCLUSION

All of this is a somewhat roundabout way of saying the Plaintiff's claim is

not futile.

Plaintiff's motion to add party and supplemental claims should be granted.

Respectfully submitted,

**Goldberg & Cuvillier, P.C.**                    */s/ Ralph Goldberg*
3469 Lawrenceville Hwy., Suite 102        Ralph Goldberg
Tucker, Ga. 30084                                    Georgia Bar No. 299475
(404) 378-7700                                          Attorney for Plaintiff
(404) 378-7708 FAX
attorneygoldberg@hotmail.com

20

## **<u>CERTIFICATE OF SERVICE</u>**

This is to certify that I have this day served counsel of record for the opposing party in the foregoing matter with a copy of **PLAINTIFF'S BRIEF IN SUPPORT** to the Clerk of Court using the CM/ECF system which will automatically send electronic mail notification of such fling to counsel of record:

Arash A. Sabzevari, Esq.
Jack Reynolds Hancock, Esq
Freeman Mathis & Gray, LLP
661 Forest Parkway
Suite E
Forest Park, GA 30297
asabzevari@fmglaw.com
jhancock@fmglaw.com

This 11th day of April, 2022.

| | |
|---|---|
| **Goldberg & Cuvillier, P.C.** | */s/ Ralph Goldberg* |
| 3469 Lawrenceville Hwy., Suite 102 | Ralph Goldberg |
| Tucker, Ga. 30084 | Georgia Bar No. 299475 |
| (404) 378-7700 | Attorney for Plaintiff |
| (404) 378-7708 FAX | |
| attorneygoldberg@hotmail.com | |